J-S50031-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| AMY WANO EDMUNDSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACK OLIVER EDMUNDSON, JR. | : | |
| | : | |
| Appellant | : | No. 76 WDA 2018 |

Appeal from the Order Entered, December 22, 2017,
in the Court of Common Pleas of Indiana County,
Civil Division at No(s):  12061 CD 2014.

BEFORE:  BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:               FILED NOVEMBER 20, 2018

Appellant Jack Oliver Edmundson, Jr. (Husband), appeals pro se the trial court's order denying his "petition to dissolve/vacate [the] marriage settlement agreement."  We affirm.

We glean from the trial court's opinion the following history: On December 30, 2014, Appellee Amy Wano Edmundson (Wife) filed a complaint in divorce, which included claims for equitable distribution. See Trial Court Opinion (T.C.O.), at 1. On June 23, 2015, the parties memorialized the terms of their property distribution via a Marriage Settlement Agreement (Agreement). Id.  The court issued a divorce decree on September 22, 2015. Id.

On March 31, 2017, Husband filed a "petition to dissolve/vacate [the] marriage settlement agreement."[1] Id. After several continuances, the court held a hearing on the matter on September 27, 2017. Id. Husband represented himself, testifying by phone because he was incarcerated.

Husband testified that while in custody at the Indiana County Jail, a psychologist prescribed a number of medications that led to "sleep and confusion." N.T., at 7. He further testified that he suffered "some renal failure" which sometimes leads to confusion. Id. Husband stated that the medicine caused him to sleep so hard that he wet himself, because he did not realize he had to use the bathroom. Id. Husband claimed that these incidents were documented. In summation, Husband argued that the combined stress of the pending legal matters and the side effects of the medication caused him to sign the Agreement under duress. Id., at 8-9. The trial court kept the record open to for 20 days to allow Husband to submit documentation supporting his argument. Id., at 12. Husband acknowledged that 20 days would be more than sufficient because he would put the documents in the next day's mail. Id. However, our review of the record reveals that Husband provided no further documentation.

---

[1] In fact, this petition was actually Husband's second such request. He previously filed a petition to vacate the agreement in 2016, but soon thereafter withdrew his request.

At the hearing on Husband's petition, the court offered Wife an opportunity to present her side of the case. Wife, who was also unrepresented raised one matter with the court, which was entirely ancillary to Husband's petition.[2] In any event, Wife did not make any argument, offer any testimony, or submit any documents. Husband sought to question Wife, but the court prevented any questioning.

Nearly three months later, on December 21, 2017, the trial court denied Husband's petition to vacate the Agreement. Husband submits this timely appeal.

Husband presents 10 issues, which we reorder for ease of disposition:

1. Was [Husband] under duress when he signed the Marriage Settlement Agreement?

2. Was [Husband] under the influence of prescribed medication that rendered him unable to fully comprehend the legal and financial ramifications associated with the signing and execution of the Marriage Settlement Agreement?

3. Did [Wife] threaten [Husband] and cause undue duress prior to the execution of the Marriage Settlement Agreement?

4. Was [Husband] under undue influence to sign the Marriage Settlement Agreement?

5. Whether the [trial court] was biased and prejudice[d] in hearing six (6) other cases involving the defendant, both civil and criminal?

_____

[2] Wife referenced the no-contact order she obtained against Husband. However, that matter was before the Centre County Court of Common Pleas and had no bearing on the instant matter in Indiana County.

6. Did the court conduct an unbiased hearing on the petition to vacate/dismiss the Marriage Settlement Agreement?

7. Did the court abuse its authority by denying [Husband] to question the appellee or otherwise permit any interaction of questioning [Wife] at the brief phone hearing conducted by the court for the petition to vacate/dismiss the Marriage Settlement Agreement?

8. Did the court abuse its authority by denying [Husband] the required discovery of the Marriage Settlement Agreement?

9. Did the Wife breach any part or portions of the Marriage Settlement Agreement, thereby making such Marriage Settlement void?

10. Did the trial court permit the Husband to seek damages, specific performance or other appropriate relief of remedies due to violating parts or portions of the Agreement?

Husband's Brief, at i-ii* (prior to pagination).

The first four issues encompass the crux of Husband's appeal: whether the parties' Agreement should be set aside due to Husband's alleged duress. The trial court found Husband's contention to be meritless; we agree.

"A court's order upholding a [marriage settlement] agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review." Holz v. Holz, 850 A.2d 751, 757 (Pa. Super. 2004).

As we have previously explained, "settlement agreements are governed by the same rules of law as ... contracts." Adams v. Adams, 848 A.2d 991, 993 (Pa. Super. 2004) (citation omitted). "Absent fraud, misrepresentation, or duress, parties are generally bound by the terms of their agreements." Id.

(Citation omitted). We have defined "duress" as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." Id. (Citation omitted). "[T]he mere fact [that an] appellant [is] faced with stress and anxiety resulting from [his] divorce proceedings does not establish duress in the legal sense." Id.

We agree with the trial court's reasoning that Husband "presented no evidence indicating that he was under any of the conditions legally constituting duress, only that he was experiencing much stress, anxiety, and depression due to the overall circumstances of his divorce and pending criminal case." T.C.O., at 2-3; see N.T., 9/27/17, at 8-9.

Husband set forth an auxiliary basis for the duress; Husband also argued that he was "under the influence of prescription medications for stress, anxiety, and depression at the time he signed the Agreement and these rendered him unable to understand its contents." T.C.O., at 3. The only evidence Husband proffered on the subject was his own testimony. Husband testified that his medications led to irregular sleep and confusion. N.T., at 7.

"It has long been the law of Pennsylvania that the evidence required to set aside a transaction on the basis of mental incompetency must be clear, precise and convincing." Elliott v. Clawson, 2004 A.2d 272, 273 (Pa. 1964) (internal quotation marks omitted). "Where mental competency is at issue, the real question is the condition of the person at the very time he [or she] executed the instrument...." Sobel v. Sobel, 254 A.2d. 649, 651 (Pa. 1969).

Competency to enter contracts is presumed, and the burden rests upon the one who seeks to show a lack of competency. Id.

Unconvinced by Husband's testimony, the trial court determined that Husband was of sound mind when he signed the Agreement:

> [Husband] has compiled and presented a list of medications that he was taking during this time-period and their purported side effects; however, he does not provide any precise evidence regarding his condition at the time he executed the Agreement other than a general assertion that he did not comprehend what he was signing. Such a broad assertion does not rise to the level of clear, precise, and convincing evidence as required. [...] While the divorce proceedings were pending, [Husband] drafted and filed multiple pleadings and engaged in coherent correspondence. On September 21, 2015, one day prior to the entry of the Divorce Decree, [Husband] entered a negotiated guilty plea to first degree murder and was sentenced to incarceration for the remainder of his natural life. Pursuant to the entry of the guilty plea, a full oral and written colloquy was conducted with [Husband.] During the course of the oral colloquy and within the written colloquy, [Husband] was asked if he was presently taking any medications that would affect his ability to understand, think or affect his free will, and he responded that he was not. For these reasons, the [trial] court finds that [husband] has failed to meet the requisite burden of proof to rescind the Agreement on the basis of mental incompetency.

T.C.O., at 4. The trial court's conclusion was not an abuse of discretion.

Husband's next two issues, 5-6, allege that the trial court judge was biased against him because he oversaw Husband's criminal proceedings as well. However, Husband did not raise this issue in the trial court and cannot do so for the first time on appeal. See Pa.R.A.P. 302(a). Still, we observe the common practice across the Commonwealth that one judge will often preside

over multiple cases involving the same family. This alone is not a basis for bias. Moreover, our review of this proceeding revealed that the trial court was very accommodating, given that Husband was unrepresented and appeared by telephone.

Next, in his seventh issue, Husband claims that the court erred when it forbade Husband from cross-examining Wife. We discern no abuse of discretion here either. Wife did not present a case, and it was evident from Husband's case that she was not a material witness. See N.T., at 12. In other words, Husband did not even make a prima facie case for duress. The court explained that cross-examination was not appropriate, because Wife had no knowledge of the matters about which Husband testified. Id., at 15. Husband seemed satisfied with this explanation at the hearing, but raised this contention on appeal. Id. In any event, we conclude that the trial court's procedure did not constitute an abuse of discretion.

Finally, Husband raises issues relating to the specific substance of the Agreement, i.e., the scope of the property it disposed of, the Agreement's terms, and whether Wife was in breach. However, none of those issues was before the court on the date in question. The request for discovery, which included both property and custody interrogatories, was entirely irrelevant to the question of whether the Agreement should be set aside because of Husband's duress. Likewise, whether Wife violated the Agreement or whether Husband was entitled to specific performance by its terms were also not before

the court.  Even if they were, Husband did not address these issues during his case in chief.  Thus, these matters are not properly before us now.

In sum, we find no merit to any of the 10 issues Husband raised in this appeal.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/20/2018